Good morning, Your Honors. I'm Allison Clare, Assistant Federal Defender, on behalf of Mr. Warren. And this morning I would like to discuss the claim regarding the trial judge's participation in discussions that led to a plea agreement. Before you do that, I have maybe a more universal question. Why isn't this case almost solely about Latches? In other words, the guy waits 21 years, the trial judge is dead, the Assistant U.S. Attorney is dead, his lawyer's memory is about dead. Why isn't Latches written all over this case? Well, Latches was litigated extensively below, as the record indicates, but the district court found correctly that Latches doesn't bar this action despite the passage of time, because the primary question in Latches is whether the passage of time has resulted in prejudice to the government in litigating the claims of the petition. And despite the changes in the available witnesses, the fact is that as to the two, I think, most needy claims here, on the ineffective assistance of counsel claim, Mr. Tedman testified at the evidentiary hearing, and you have his testimony, which amounts to a record not that different from that we have in more current habeas cases where similar allegations are made. Counsel was unequivocal in his testimony that he never had a psychiatric evaluation done, never ordered medical records or in any way investigated because of his take on the case that it didn't present psychiatric issues. But you're saying in defending this person before a jury, he should have produced evidence that he was not only charged with this crime, but he was a convicted sex offender. That would have helped his defense? That is Mr. Warren's theory. And in answer to Judge Nelson's question, the question really is whether a determination can be made based on the existing record as to whether Mr. Warren can prevail on that claim. And my response to the question is, the record is sufficient. Well, now, Singleton says you've got to show some prejudice, don't you, by the lawyer's failure to do something. You're correct. Once we get to the merits. I would say had he proved to this jury that his client was not only charged with the murder, but was also a regular sex offender, he would have been guilty of false, I mean, inadequate representation. I think it's important to bear in mind in that regard that perhaps I may have erred in the way that I just formulated this claim to the court. In actuality, Mr. Warren's claim is that his plea was involuntary because it was at the advice of counsel who had not fully investigated this defense. And the theory of prejudice which is set forth in the briefs is that pursuant to Hill v. Lockhart, when the claim is one of ineffective assistance leading to an involuntary plea, the question is whether the defendant would have proceeded to trial had he been advised of the insanity defense that was the law of the circuit at the time. Now, Hill does also say that the viability of that defense is relevant to this determination. And really, I think the final word that I can say about this issue is that the record supports that Mr. Warren would have, despite his lawyer's advice to the contrary, insisted on presenting that defense at trial. And if that is sufficient prejudice, making a plea he would not otherwise have made, then he prevails. If it is not, he does not. That's the best argument he had, that he needed an insanity defense if he would have done that. That's the claim, Your Honor. He would have been, he would have demonstrated insanity to have insisted on that going to the jury. Have I answered the laches question to your satisfaction, Judge Nelson? Back to laches for a minute. We usually review habeas cases de novo. Is there any factual finding underlying the district court's laches rulings that we would have to review for clear error, or do we look at that whole thing de novo? Well, I suppose the factual findings, which are amply supported by the record, are that trial counsel remembered not ever considering or investigating a mental health defense. And that trial counsels contemporaneously made file notes regarding the in-chambers conversations with the prosecutor and the judge about a plea were accurate representations of what transpired. I suppose it's, I would call it a mixed question subject to de novo review whether those facts are sufficient for resolution of the claim, which is the laches question. And I think those facts are sufficient for resolution of the claim. Specifically, if I may turn now to the issue of Judge Halbert's insertion in plea negotiations. The magistrate judge pointed out that those file memos, which you have in your excerpts of record, are in some ways a better record of what happened than you often get from trial counsel, even in a much more recent case. The government has persisted in characterizing this as a Rule 11 claim, but I hope the briefs make very clear that it is a claim of an involuntary plea, a coerced plea, by virtue of the judge's involvement. How is that different? Well, Rule 11, a technical violation of Rule 11, does not necessarily result in an involuntary claim. The cases which this Court has decided on direct appeal, which involve Rule 11, that I've cited, the Worker case and Gruel, Bruce, and Anderson, discuss the prophylactic intent behind the adoption of Rule 11's ban on judicial discussion of plea agreements. And they explain that the evil to be prevented is that a defendant would feel, because the judge had helped put a deal together, that the judge wanted that certain result. And the defendant would then feel compelled to go along with it, because the judge has his life in his hands. Now, certainly, not every Rule 11 violation involves facts in which the judge's participation did so coerce the defendant. We are saying that in this case, it did. But I acknowledge that we have to prove more than the technical rule violation. The technical violation of Rule 11 is, I would say, the most important circumstance in the totality of the circumstances analysis that is brought to bear on a claim of involuntary plea. And those... I'm trying to figure out, if you were granted relief, how this evidentiary hearing would go forward. The judge is dead. The prosecutor is dead. There's no transcript. And all the defense lawyer can say is, I just can't remember. No. If we... What we are saying is that relief on the 2255 motion may be granted on the record that exists, which means on the basis of the file memos and Mr. Tedman and Mr. Warren's testimony regarding what transpired, without the need for a further evidentiary hearing. Didn't Tedman say he doesn't recall the judge acting in any coercive way at all? Tedman adopted the memos that he laid out, which are in your excerpts of record, tab 3 at pages 144 to 1... Excuse me, 143 to 144. We start with an answer to my question. Did Tedman recall whether the trial judge acted coercively? He did not. He testified that he would adopt the facts as they were set forth in his memos. And for the reasons I will now explain, those facts are sufficient to support a conclusion of coercion. Rule 11 is an absolute prohibition on discussion by the judge about the plea before two things have happened. The parties have independently reached agreement, and that agreement has been set forth in open court. U.S. v. Bruce states that rule, among other cases. Now, in this case, the Tedman memos make clear that neither of those things had yet happened, which is what distinguishes this case from United States v. Frank, upon which the government relies. Well, the only thing that hadn't happened was whether or not he could do a plea to one offense, wasn't it? Well, there were two things that had not happened. Well, actually three. At the time of the trial began, Mr. Tedman, like his predecessor, Mr. Jenkins, who was the first lawyer assigned to the case, had attempted to persuade Mr. Warren to plead guilty, and Mr. Warren had adamantly refused. He wanted to go to trial on the case. So a plea agreement had been discussed between counsel. It had been rejected by the defendant and subsequently taken off the table by the prosecutor. So on the first day of trial, there not only was not an agreement, there was not even an offer left on the table. Defense counsel, again by his own memo, wanted to make a last-ditch attempt to resolve the matter by plea, and his attempts to prevail upon the prosecutor to reopen the offer were unsuccessful. So he went to the judge, and to quote from the memo, Tedman says that the judge prevailed upon the prosecutor to reopen the plea offer. Now, the defendant had not authorized his attorney to accept that offer, so that was not the end of it. Mr. Tedman left the Chambers Conference, went back to his client, and says, the judge has arranged for this offer to be open again. I think you should take it. Mr. Warren said no. Mr. Warren said, I don't like that offer. I want these other terms. Didn't he go and ask the judge, would he approve my pleading to just one of the charges? That was the next step. After the judge had himself resulted. And after those things happened, Mr. William, what's his name, Warren, said, please go and ask the judge, would he approve one with some lesser terms? That's correct. He said, all right, I'll do as my client asked and go and ask the judge. And the judge said, no, I wouldn't approve one that didn't cover all of the charges. That's correct. That was the second. In a way, there were two different conversations with the judge first causing. Just to see if he could get any. That's correct. And that certainly didn't hurt your man to be offered a plea agreement. Well, I would say that on this claim, which has to do with the voluntariness of my client's decision, the question whether or not the plea was in his best offer isn't really relevant. He had a right to go to trial. And the question is whether the judge's participation in that conversation, getting the offer back on the table and then being the one rather than the prosecutor to say, no, you can't have agreement A, you can only have agreement B, had a coercive effect. Don't judges often inquire of the parties in a criminal case, is there any plea agreement likely in this case? That is true. And it is also true. And isn't that forbidden? No. Once an agreement has been reached between the parties. Let's say the judge doesn't know anything about it except it looks like it's going to be a tough case. Is there any chance, counsel, of your parties working out a plea agreement? That is a yes or no question that I do not believe Rule 11 prohibits, but it's not what happened here. And then one of the lawyers leans over and says to his client, they've offered you a plea agreement here and they want to sentence you to ten years. And he says, ask the judge, would he go for one? And he says, judge, would you approve this plea agreement if we just provide it for one? And he says, no, I don't think I would. That's forbidden. That would be a violation of Rule 11. I used to be a real judge before I took up quality control work. And I thought that was done fairly often. This case has addressed similar questions before. And one case that I cited in the brief that I think is particularly instructive, United States v. Worker, was decided shortly after Rule 11 went into effect. And in that case, there was a prosecutor who, despite Rule 11's endorsement of the process of plea bargaining, didn't want to agree to anything that would involve making a recommendation. And the judge who wanted to effectuate having a disposition by plea proposed that he announce, for the record, what the defendant would be looking at should he decide to plead guilty. And he tried to structure that in such a way that it wouldn't coerce the defendant. It hasn't got anything to do with this case, has it? I mean, that's the judge saying, let me tell you what I'll do for you. Exactly. And the only reason for which I cite a judge isn't because it's on point factually, but it gave this court one of its first opportunities to instruct the lower courts about the purposes of Rule 11 and the evils that it is to prevent. And the court said that even though on those facts the judge was going overboard not to coerce anything but to remain entirely neutral and simply provide information for the defendant to make a decision. If Warren had said no deal, what would he have been facing? I believe 20 years on each count, so more than a life sentence. So 17 counts? Correct. At 20 years each? That's correct. Okay. Just thought I'd ask. In addition to the patent Rule 11 violation, the other factual circumstance that I just wanted to point out goes to... What you claim is a Rule 11 violation in view of the Frank case. In Frank, the parties had already reached an agreement during trial, and they went to the judge to say, we have an agreement. In this case, the parties went to the judge because they did not. Would you accept this deal? And that was a precondition to their continuing with the negotiation, because if the judge says no, then they go back to trial. I believe the conversation in Frank was, may we stop the proceedings now and switch gears to a change of plea. And the rule that was cited in Frank is the same one articulated in Bruce, which is a bright-line rule. No comments by the judge about a potential plea until that plea has been agreed to by the parties and set forth on the record. In Frank's, most of the comments that were objected to by the defendant were actually statements that were made during the course of the Rule 11 colloquy as the judge attempted to ensure that Mr. Frank indeed understood what the plea was about. And this court said, no, you can't complain about that. The judge did what Rule 11 requires. After the lawyers told him that there was a deal, and it was set forth in open court, then he tried to inquire of you whether you wanted to do that. And that's not what happened here. It was all done behind closed doors and didn't involve Mr. Warren. And it was only when we have the extra factor of the judge having said, get an offer back on the table, I'll take this one and not that one, that Mr. Warren agreed to plead. Up until that point, he had been adamant about not accepting a plea offer. There was a waffle on the first day of trial, but he reverted to his old stance, which was, no, I will not plead. And because the judge's involvement was the only thing that made the situation different on the first day of trial, we can see coercion. No, I will not plead if he would approve if I plead to just one offense. Now, that was instructing to his lawyer to go to the judge, and maybe he was so clever he knew that if the judge answered that, he would set you up for a case 40-something years later to get him out of jail. Well, again, that second part of that transaction has to be considered together with the first, which was the judge. Just saying to the prosecutor, you put an offer out. You jerked it back. Now, why don't you leave it out and see if you folks can settle this case? Now, that might, of course, the prosecutor. Rule 11 isn't to defend the prosecutor, is it, protect the prosecutor? Rule 11 is to protect the defendant from feeling under pressure. Now, I can see where the prosecutor was under some pressure from this judge. I have no doubt that the prosecutor was. Yes, he did now, and I don't know how he acts, but I imagine he was letting them know, you better put it back on the table. I think Mr. Tedman's memo makes clear that the judge did indeed strong-arm the prosecutor, and I'm not in any position to disagree with the court as to the relative benefit to Mr. Warren of going one way or the other, but the only question is whether Mr. Warren's eventual plea was the result of the judge having gotten involved in that discussion or not. And if it was, he prevails. And that's a gotcha, isn't it? I won't concede that, but I can understand your conclusion. One question, going back to Latchey's, on the question of prejudice. On a prejudice analysis, is it legitimate to look at the fact that now, 25, going on 30 years after these crimes, that if we were to make a ruling that resulted in the government having to go back for a new trial, for example, the fact that they would have zero possibility of convicting this man of even being alive on those days, was that a part of the prejudice analysis? No, it's not, Your Honor. This Court held 20 years ago in Aiken v. Spalding, which may not be cited in the briefs. It's 684 Fed 2nd, 632. It remains good law. And the Court was presented with exactly that question. A district court had dismissed on Latchey's grounds six years after a plea because there weren't witnesses available any longer. And the Ninth Circuit held that the language of Rule 9, which speaks only to prejudice regarding litigation of the motion, means what it says, and that prejudice as to retrial shall not be considered. That case has never been overturned. It remains good law. And because that is the rule, cases throughout the country in all circuits have denied Latchey's motions, even after 20 to 30 years. The question is, is there enough evidence here to decide the 2255 claims? You had 684 Fed 2nd, 832. Is that right? 684 Fed 2nd, 632. That's correct, Your Honor. Well, I was close. All right. Thank you. Thank you. May it please the Court. My name is Samantha Spangler. I'm an assistant United States attorney who was assigned to handle this case only for the argument on this appeal. And I had nothing to do with the underlying prosecution. I think you're much too young to have anything to do with the underlying prosecution. Well, that is true. I have thoroughly reviewed the record. And I think that I can enlighten the Court about some matters in a different perspective than counsel or the defendant has given the Court. But first I want to start with the matter you were just addressing regarding the prejudice. And it's my understanding that the Talink case, which is at 24 Fed 3rd at page 47, said that the prejudice to the government, that the government has to show, is both its ability to respond to the petition and its ability to mount a retrial. And I gather from the review of the record that the prosecution in this case, in its initial laches argument, contended that we would be unable to mount a retrial in light of the immense passage of time, but that we had inadequately addressed the government's ability to respond to the petition, and that's what led to the evidentiary hearing. Even if it's pretty clear that the fellow was denied his constitutional rights, he can't be given them now because the government couldn't retry him. Is that what you argue? Well, I'm arguing that one of the factors in the analysis under laches is the prejudice to the government in the ability to retry. So you announce from the bench that a man is in the penitentiary unconstitutionally and he shall stay there. Well, I think, Your Honor, that the remedies available to the Court are beyond merely retrial. For example, one of the things that Mr. Warren is asking for here is a reduction of his sentence. And, in fact, one of the things that he repeatedly harps on when you read his personal statement of facts is that he has been denied by the Bureau of Prisons this sexual offender counseling. Because it wasn't involved in his sentencing. I'm sorry, I didn't hear what you said there. It was not involved in his sentencing. That's right. And I think that the fact is, though, when you scrutinize this record, you see that the Bureau of Prisons has regularly taken up this issue and has concluded that Mr. Warren would benefit from sexual abuse counseling, from sexual offender counseling. And the reason that the Bureau of Prisons has not provided it for him is that Mr. Warren must be in the maximum security confinement because of his numerous escapes. So he has brought on himself his inability to obtain the counseling that he so desires because that counseling is available to him only at lower security prisons. Where he can't escape. Right. Yeah. So. They used to file lawsuits so they could come to court and have a shot at getting out. Mr. Warren did come to court, and he did testify at the evidentiary hearing regarding the latches issue, and he did not escape. So perhaps we credit the United States. Perhaps we credit the United States Marshal in the Eastern District. Perhaps we credit Mr. Warren for that. Maybe he's turned around his attitude toward escape. In regard to the arguments relating to the judge's involvement in the plea process, I think that it's very important for the court to look at the record at pages 161 and 162 of tab 3. You didn't finish, though. Didn't I? The question of prejudice. Has the government prejudiced in meeting the petition? And it seems to me you might have some things to say on this. Well, that's correct, Your Honor. I can go back to that. The court ultimately rejected our latches argument altogether, and I think that was because of this back and forth between Magistrate Judge Hollos and Judge Carlton. Judge Carlton seemed to reject the latches argument, and that left the Magistrate Judge virtually no choice but to do the same, although he had embraced it at least partially before that. But as to the government's prejudice, we have no transcript of the plea colloquy regarding the two out-of-district burglary charges, bank robbery charges, excuse me, that occurred on December 19th. We only have the plea transcript from December 1st, the day that he pled guilty in the beginning of his jury trial. We have no transcript of the sentencing proceedings. The court reporter disposed of her notes pursuant to standard operating procedure and court order. The trial judge is dead. The prosecutor is dead. Do we have the prosecutor's version of these events? No, we don't, because the United States Attorney's file has been disposed of in our ordinary course of disposing of cases after a certain period of time. The Federal Defender's file, which apparently at one time existed sufficiently for Freedom of Information Act requests to be supplied to the defendant, it then subsequently disappeared. And it's unknown whether it was lost or misplaced or if it was destroyed in an ordinary course of business. But it is not available to us. And the court record, the court files have been largely disposed of as well in the ordinary course of business. So we have very little file to go on. The court clerk who was present in the courtroom on these proceedings has been contacted. She's still with Eastern District Court, and she doesn't remember the proceedings. The court reporter at the sentencing proceeding was not identified in the clerk's minutes, so we don't even know who to try to talk to about that. The probation officer who prepared the pre-sentence report was usually present at sentencing proceedings, but he has no recollection whether he was there this time or not. So there's just no way to know what happened at the sentencing proceedings. Whose version is available? Wasn't there a memorandum by defense counsel? Not regarding sentencing. The only thing we have from Mr. Tedman is relating to the plea proceedings. Well, and in order to meet this petition, you have to have your side of what happened at the plea. Right. The creation of the plea. But to some extent, Your Honor, the government certainly would be inclined to credit Mr. Tedman. Mr. Tedman is well known in the Eastern District of California. He's a very honorable and very effective lawyer. But you did prosecute his client. Well, yes, we did. Yeah, and didn't agree with him throughout the trial, I guess. Well, right. But as far as his memo to his file about what happened, it is not the record that we have. And to that extent, I mean, there is nothing that we have to rebut that. But I don't have any reason to dispute what Mr. Tedman has said is the record. Well, it's kind of like a Rule 11 motion to dismiss. Except in all that is true, he still doesn't make out a case. Right. But you do better if you have some rebuttal. Well, exactly, Your Honor. And regarding the Rule 11 slash due process claim, we at least have Mr. Tedman's notes. Regarding these other claims that go to things that happened at sentencing, we don't have anything. We don't have anything at all. And in that regard, the magistrate judge seems to credit us with our latches argument, even though he didn't take it all the way and rule on latches as the basis for the denial of the claim. But we're reviewing the district judge's. Well, of course, the district judge merely adopted the magistrate judge's analysis in full. So that's why I refer to the magistrate judge's findings and recommendations. It is clear, though, from the review of the memo to file regarding this interaction between Judge Halbert and Bruce Babcock, who was the prosecutor, and Mr. Tedman, what happened there. And it's important to know the background, which Mr. Tedman testified about. He said there used to be this thing called the Babcock Rule. The Babcock Rule, based on this prosecutor, was that once the trial confirming hearing came and went without a guilty plea, there was to be no more offer. And Judge McBride was assigned this case initially. Judge McBride entered a pretrial order after the trial confirming hearing that apparently ordered that there be no plea agreement, because there hadn't been one. He was the judge essentially was endorsing the Babcock Rule. And so then Mr. Tedman decided, once the case got reassigned to Judge Halbert, that he would ask Judge Halbert whether Judge Halbert was also going to enforce Judge McBride's pretrial order endorsing the Babcock Rule. And that's what he did. He went to the prosecutor. And the prosecutor, I would assert, is in a position where he's got a court order saying no plea agreement. So even if he wanted to enter a plea agreement, he's got a court order saying he can't. So that has to be brought up with the judge. The prosecutor has something to take up with the judge in chambers anyway about a reluctant witness. So they go into the judge's chambers. They talk about the reluctant witness. They resolve that issue. And then Mr. Tedman says, are you going to enforce pretrial order number 58, which is this Babcock Rule? And the judge then says, no, if you have a plea agreement, you can enter a plea agreement. And apparently, Mr. Tedman tells the judge what the plea agreement had been had the defendant accepted it, what the plea offer was by the prosecution, and what Mr. Tedman had been recommending to the defendant that he accept. And that was that he plead to the three charges that he ultimately pled to. And Mr. Babcock, apparently wanting to enforce his Babcock Rule, must have expressed some reluctance, and that's why Judge Halbert told him, well, look, on those three counts, you can get 60 years, 3 times 20. And that was the exertion of influence on him. Now, remember, this wasn't the judge's idea to have this discussion about this plea agreement. This wasn't the prosecutor's idea to have this discussion about the plea agreement. It was the defendant and his attorney who raised this issue in the first place. I just can't see how we get to coercion by the district judge under those circumstances, even when you go the next step. And Tedman goes back to Mr. Warren. You know, they're in the middle of a jury trial here. Jeopardy is attached. And they're still working on negotiating a plea. You know, what you have described, Mr. Babcock, the late Mr. Babcock, is one of thousands of people who have tried to get cases settled before you disconvenience jurors and bring them to court. And by making a strict rule, we won't even consider settlement after the trial starts. That doesn't work either. No. Everybody's tried to figure out a way. Most of us have suggested some, and none of them work. I've been a prosecutor for 10 years, Your Honor, and I've pled cases on the day of trial. I know. And once they look into the jury's eye, then things get settled. That's right. And if only you could settle them a week before, the operation of the courts would be improved so much the taxpayers would be happy. It would sure save some inconvenience to the jurors. That's absolutely right. I take it your opponent's position is that, as I, she can speak for herself, that she's saying that Rule 11 just flatly prohibits the involvement of the judge in plea discussions, that here there was involvement of the judge, and it doesn't matter that the benefit went to the defendant. In other words, that they got Babcock off the Babcock rule to the ultimate benefit of the defendant. That doesn't matter. What is really important is you read Rule 11, and the judge was involved in the plea discussions. They win. Well, if we were here on direct appeal, Your Honor, then you might be able to get there from here to what you just said. But we're not here on direct appeal. We're here on collateral attack. And a Rule 11 violation would not support the reversal of a conviction or a sentence because it is not a constitutional violation. And so counsel has very carefully attempted to convert the Rule 11 violation into a due process violation. But I just don't see how anything that Judge Halbert did was coercive. When all of this was initiated... But she wants to assert a constitutional violation as a basis for the case. Once she gets over the time limitation. In other words, the inadequate assistance of counsel is a Sixth Amendment case. Well, I didn't understand that this claim that Judge Halbert was improperly involved in the plea negotiation related to ineffective assistance of counsel. I understood that it was a due process argument. That the Rule 11 violation was the way in which the due process violation occurred is what I think she's arguing. And that's very crafty. And maybe there's a case where that might be so. But I don't see it here because it was the defendant and his attorney who initiated all the contact with the judge. All of it. I mean, they were in trial. You call that invited error, don't you? Yes, you do. Does the Court wish that I discuss the insanity issues? I would refer the Court to Park Dietz's review that we've referred to in our brief. And it's contained within the record. Park Dietz is a nationally renowned expert. He was familiar with the Wade insanity standard. And he's familiar with the current standard. And his analysis is that under any analysis, the defendant did not have a leg to stand on with an insanity defense. None of the so-called psychiatric evaluations of him in the past had gone to anything that could be presented to the jury to show that he was insane, that he did not appreciate the wrongfulness of his conduct, that he was delusional or anything of the kind. Unless there are any further questions, I would submit it, Your Honor. I guess not. Thank you very much. Thank you. You had a little time left, I believe. I'll just very quickly respond to a couple of counsel's points. On the latches question, the Talink case does have language referring to prejudice at retrial. And I have no explanation for why that court did not consider the binding authority of Aiken. Aiken is on all fours, directly answered the question that you asked in the negative, and the dicta in Talink is inconsistent and has to be disregarded. As a matter of clarifying what happened below, because there was some discussion about this case had four sets of findings and recommendations. And we are here after the final set in which Judge Carlton adopted the magistrate judge's FNR's recommending denial primarily on the merits of the four issues that are briefed. The only one that was denied, not on latches grounds, but procedural bar, was that involving the trial judge's questioning of Mr. Warren at his sentencing hearing about his state sex charges. The other three were denied on the merits. The district judge had rejected the magistrate judge's finding that many claims in the petition were barred by latches and had in a separate order dealing with a separate set of findings and recommendations after an evidentiary hearing adopted the finding that latches could not bar the claim of an involuntary plea due to ineffective assistance of counsel because Mr. Tedman's memory was sufficient to permit a finding on the merits of whether his representation was adequate. All right. Thank you, Your Honor. The case just argued to be submitted.
judges: Hill, Tg Nelson, Hawkins